**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| BROTHERHOOD OF | § | |
| RAILROAD SIGNALMEN, | § | |
| | § | Civil Action No. _____ |
| INTERNATIONAL ASSOCIATION OF | § | |
| SHEET METAL, AIR, RAIL AND | § | |
| TRANSPORTATION WORKERS – | § | |
| TRANSPORTATION DIVISION, | § | |
| | § | |
| BROTHERHOOD OF LOCOMOTIVE | § | |
| ENGINEERS AND TRAINMEN, | § | |
| | § | |
| BROTHERHOOD OF MAINTENANCE | § | |
| OF WAY EMPLOYES DIVISION | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

1.      Plaintiff BNSF Railway Company ("BNSF") brings this civil action for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-163, against Defendants Brotherhood of Railroad Signalmen ("BRS"), International Association of Sheet Metal, Air, Rail and Transportation Workers – Transportation Division ("SMART-TD"), Brotherhood of Locomotive Engineers and Trainmen ("BLET"), and  Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED") (collectively, the Defendants or the Unions).

2.      This dispute arises from BNSF's decision to comply with Executive Order 14042 issued by President Biden on September 9, 2021 and subsequent guidance issued by the

1

President's Safer Federal Workforce Task Force ("Task Force") requiring all "covered employees" of covered entities to be fully vaccinated against COVID-19 (the "vaccine mandate"). BNSF maintains that its actions in implementing the federal vaccine mandate are permitted under long-standing past practice, the express and implied terms of its existing collective bargaining agreements with each of these Unions, arbitral authority, and/or legal precedent.

3. Defendants have opposed virtually identical vaccine policies on other railroads, and three of them have already filed suits on this same subject in this Court against one of those other rail carriers. The other defendant, BRS, has refused to respond to BNSF's requests for assurances regarding the proper characterization and handling of this dispute. Hence, on information and belief, Defendants contend that BNSF lacks authority under its collective bargaining agreements to require compliance with the vaccine mandate and/or to implement terms for complying with the vaccine mandate.

4. It is at least arguable that BNSF has the right under its existing labor contracts with the Defendants to require compliance with the federal vaccine mandate and/or to implement terms for requiring vaccines, which means that this case presents a "minor dispute." Under Sections 2 and 3 of the RLA, such disputes must be resolved through negotiation and/or binding arbitration. 45 U.S.C. §§ 152, 153 First (i). Because the Defendants disagree, there is a live case or controversy over the proper characterization of this dispute, and BNSF is entitled to declaratory relief to resolve that matter.

**PARTIES**

5. Plaintiff BNSF is a common carrier by railroad engaged in interstate commerce and is a "carrier" within the meaning of the RLA Section 1 First, 45 U.S.C. § 151.

6.      Defendant BRS is an unincorporated association and a labor union.  BRS is a representative within the meaning of the RLA, 45 U.S.C. § 151 Sixth, and represents signalmen and other individuals employed by BNSF.  BRS's principal place of business is 917 Shenandoah Shores Road Front Royal, VA 22630.

7.      Defendant SMART-TD is an unincorporated association and a labor union. SMART-TD is a representative within the meaning of the RLA, 45 U.S.C. § 151 Sixth, and represents conductors and other individuals employed by BNSF.  SMART-TD's principal place of business is 24950 Country Club Blvd., Suite 340, North Olmstead, Ohio 44070.

8.      Defendant BLET is an unincorporated association and a labor union.  BLET is a representative within the meaning of the RLA, 45 U.S.C. § 151 Sixth, and represents engineers and other individuals employed by BNSF.  BLET's principal place of business is 7061 East Pleasant Valley Road, Independence, Ohio 44131.

9.      Defendant BMWED is an unincorporated association and the collective bargaining representative, as defined in Section 1 Sixth of the RLA, 45 U.S.C. § 151 Sixth, of a craft or class of BNSF railroad workers that maintain BNSF's right of way.  BMWED's principal place of business is 41475 Gardenbrook Road, Novi, Michigan 48375.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. §§ 1331, 1337, and 1367 because this matter raises a question under the RLA, a federal law.  Federal district courts have jurisdiction to issue declaratory and injunctive relief enforcing arbitration and other requirements of the RLA.  *See, e.g.*, *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 303 (1989).

11.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b).  BNSF
employees represented by the Unions work in this district.

**Implied Terms of the Applicable Collective Bargaining Agreements**

12.     BNSF is party to a variety of collective bargaining agreements with the Unions
(and various other unions).  These agreements consist of both express, written terms as well as
implied terms that arise through past practice.

13.     BNSF has a long-standing and well-settled past practice of unilaterally changing
its rules and policies governing position requirements, medical standards, and safety in response
to lawful federal government directives.  More specifically, as applicable federal laws and
regulations change – either as a result of new laws being enacted or of existing laws being
amended – BNSF routinely modifies its own rules to comply, even when doing so requires
changes in its employees' terms and conditions of employment. Accordingly, BNSF has an
implied right under its labor agreements to implement new federally-mandated rules, including
but not limited to with respect to vaccinations.

14.     BNSF's rights under its labor agreements to enact changes as necessary to
comply with federal law or regulations is evidenced by a number of specific examples.  On at
least three occasions – in 1993, 1999, and 2012 – BNSF (and its predecessor Burlington
Northern (BN)) announced policy changes requiring a Commercial Driver's License (CDL) to
hold certain BRS-represented positions. These CDL requirements were imposed by BNSF
unilaterally in order to comply with federal rules.  The changes imposed in 1993 resulted in
litigation in which BRS contended the dispute was "major" under the RLA.  The court held the
dispute minor based on the railroad's past practice of unilaterally setting the requirements to
qualify for a position.

4

15.     Another example is Federal Railroad Administration Emergency Order 32, which required face coverings for certain railroad workers during the current pandemic. BNSF imposed the terms of the Order and did so without bargaining with any of the Defendants before requiring such face masks in the workplace.

16.     Drug and alcohol testing is another example. Federal guidance for drug-and-alcohol testing for railroad employees is set out in 49 CFR § 219 (Part 219). When those federal drug-and-alcohol testing rules change, BNSF changes its testing standards and protocols to match the modified federal requirements. BNSF makes such drug-and-alcohol policy changes without negotiation with any affected unions. For example, when Part 219 was modified to require direct observation of federal follow-up urine drug screens, BNSF implemented those changes to comply with the new standards without bargaining over that change. Moreover, when, in 2017, federal drug-and-alcohol testing rules were extended to maintenance-of-way employees in 2017, BNSF did not bargain with that union over the application of those testing requirements to the maintenance-of-way craft.

17.     Other examples include fitness-for-duty standards set by a governmental directive. When conductors became subject to medical testing as part of new licensing requirements (set out in 49 CFR § 242), BNSF imposed those medical requirements (e.g., vision and hearing tests) on conductors without bargaining over the application of those rules. Moreover, BNSF imposes Canadian medical fitness-for-duty standards for US-based train crews that cross the US-Canadian border. BNSF imposes those Canadian train-crew medical standards without bargaining with either BLET or SMART-TD.

18.     In addition to its implied right to implement governmental directives, BNSF has a long-standing and well-settled past practice of unilaterally changing its rules and policies

governing safety and/or medical qualifications for employees represented by the Unions even when such new standards are not mandated by government directives. Employees who do not satisfy safety rules or meet the qualifications for their position can be suspended from service. Given these long-standing past practices, BNSF has an implied right under its labor agreements to establish new safety rules or set new medical qualifications, including but not limited to with respect to vaccinations.

19.     For example, on multiple occasions BNSF has modified the rules determining what drugs and medications are permitted in the workplace and those that are not. BNSF did not negotiate with the Defendants before making any such changes. BNSF has also, on multiple occasions, revised the standards for what Personal Protective Equipment ("PPE") is required to perform various tasks in the workplace. BNSF has unilaterally modified such PPE safety standards on multiple occasions.

20.     Likewise, BNSF has, on several occasions, modified fitness for duty standards governing positions the Defendants represent, even when such new standards are not mandated by governmental directives. When BNSF decides to change the standards for a position – *e.g.* how much an employee should be able to lift, a climbing standard, etc. – it does not bargain with its unions. Applying these unilaterally-established standards, BNSF regularly makes fitness-for-duty assessments regarding individual employees. Thus, BNSF has an existing right under its labor agreements to set fitness for duty standards, including but not limited to with respect to vaccinations.

21.     The rail industry is a "reserved rights" industry. As such, a railroad may do unilaterally whatever is not proscribed by the CBA. Extensive authority from railroad arbitrations supports that position. Moreover, there are numerous awards holding that a carrier

6

enjoys broad latitude to set the requirements for holding a position (both generally and specifically when a government directive is at issue).

22.     None of the Defendants can identify or have identified any specific CBA rule that a new vaccine policy would violate.  Hence, BNSF has a reserved right under its labor agreements to impose a vaccine policy.

23.     The CBAs between BNSF and each of the Unions authorizes the Union to file a claim if it believes that the collective bargaining agreement has been violated.  If the parties are unable to resolve the dispute themselves through mandatory "conferences," the claim can be submitted to final and binding arbitration.  Arbitration is mandated by the RLA.  *See* 45 U.S.C. § 153 First.

### The Federal Vaccine Mandate

24.     On September 9, 2021, President Biden issued an Executive Order titled, "Executive Order on Ensuring Adequate COVID Safety Protocols for Federal Contractors," requiring all covered entities to comply with all guidance published by the Task Force regarding the COVID-19 pandemic, and setting a deadline of September 24, 2021 for the Task Force to issue such guidance.

25.     On September 24, 2021, the Task Force issued the guidance required by the Executive Order.  The Task Force guidance requires all "covered employees" to be fully vaccinated against the virus that causes COVID-19 no later than December 8, 2021.  The definition of "covered employees" includes "employees of covered contractors who are not themselves working on or in connection with a covered contract."

26.     BNSF has determined that it is subject to the Executive Order and, by extension, to the guidance issued by the Task Force.  The employees represented by the Unions are

therefore "covered employees" within the meaning of the Executive Order and Task Force guidance.  As a result, BNSF has announced implementation of a vaccine policy consistent with Executive Order 14042.

### The Unions' Objections

27.     On October 12, BRS sent BNSF's CEO a letter stating that a vaccine mandate would be a "unilateral change" to employee working conditions that "***must*** be bargained for." (emphasis in original). mSuch "unilateral change" language is union code for asserting a "major" dispute under the RLA.

28.     On information and belief, the other Defendant Unions also oppose BNSF's decision to comply with the vaccine mandate.  Based on the position they have taken in related matters over the same or similar policies announced by other railroads, the Unions contend that the actions announced by BNSF constitute a "unilateral change" in the parties' collective bargaining agreements, in violation of Section 2 Seventh of the Railway Labor Act.

29.     SMART-TD has recently alleged in federal court that another railroad's "unilateral implementation of the vaccine mandate" violates the RLA.  It has further stated that "any attempt by the carriers to circumvent their obligations under the Railway Labor Act will be met with strong resistance."

30.     BLET has also alleged in federal court that another railroad has "unilaterally and unlawfully altered the CBAs by unilaterally implementing" its version of the vaccine mandate.

31.     BMWED leadership has likewise stated that the union "remain[s] opposed to any potential company requirement to get the vaccine . . . ."

32.     The Unions and/or their individual members maintain that they have the right to strike or engage in other forms of self-help in response to an alleged unilateral change.

## COUNT I

33.     BNSF realleges and incorporates by reference as if fully set forth herein the allegations of paragraphs 1-32, above.

34.     A "minor dispute" under the RLA is any dispute arising out of a grievance or over the interpretation or application of the parties' collective bargaining agreements concerning rates of pay, rules, or working conditions.  Such disputes are subject to conference between representatives and mandatory arbitration by specialized boards of adjustment.  45 U.S.C. §§ 152 Sixth, 153.  Self-help is unlawful in the case of minor disputes.

35.     BNSF and the Unions are engaged in a dispute over the interpretation and application of their express and implied agreements as they apply to the vaccine mandate.  Based in part on the implied agreement terms, arbitral authority, and legal precedent outlined above, BNSF maintains that it has the right under each CBA to comply with the Executive Order and establish a vaccination requirement.  The Union's disagreement with that position amounts to a minor dispute subject to the mandatory and exclusive procedures of Section 3 First of the RLA, 45 U.S.C. § 153 First.  The Unions' contrary characterization of this dispute as a "unilateral change" or "major dispute" is incorrect because BNSF's position is at least "arguably justified." BNSF is entitled to a declaratory judgment to that effect.

36.     Because the parties' dispute over BNSF's vaccine policies is a minor dispute, Defendants are not permitted to threaten, encourage, or engage in any form of economic self-help, including but not limited to strikes, over that dispute.  BNSF is entitled to a declaratory judgment to that effect.

## PRAYER FOR RELIEF

WHEREFORE, BNSF asks for judgment against Defendants, and respectfully pray that the Court, as appropriate:

A.  Issue a Declaratory Judgment that:

1.  The parties' dispute over BNSF's vaccine policy is a minor dispute, within the meaning of the RLA; and

2.  Defendants may not lawfully strike, picket, engage in a work stoppage, sick out, or slowdown, threaten to do so, or otherwise exercise coercive self-help against BNSF, its operating rail subsidiaries and/or affiliates, or encourage others to do so as a result of or in connection with the parties' present dispute.

B.  Award BNSF its costs and expenses incurred in this proceeding; and grant damages and such other and further relief as the Court deems just and proper.

Dated:  November 7, 2021                    Respectfully submitted,


                                           /s/ *Samantha Woo*
                                           Samantha Woo (6310522)
                                           **JONES DAY**
                                           77 West Wacker Drive, Suite 3500
                                           Chicago, IL  60601-1692
                                           (312) 782.3939 (telephone)
                                           (312) 782-8585 (facsimile)
                                           swoo@jonesday.com

                                           Donald J. Munro
                                           **JONES DAY**
                                           51 Louisiana Ave., N.W.
                                           Washington, DC 20001
                                           (202) 879-3939 (telephone)
                                           (202) 626-1700 (facsimile)
                                           dmunro@jonesday.com

                                           David M. Pryor*
                                           BNSF Railway Company
                                           2500 Lou Menk Drive, AOB-3
                                           Fort Worth, Texas 76131-2828
                                           Tel:  (817) 352-2286
                                           Fax: (817) 352-2399
                                           David.Pryor@BNSF.com
                                           *application for admission *pro hac vice* to be
                                           submitted

                                           *Attorneys for Plaintiff*
                                           *BNSF Railway Company*

**CERTIFICATE OF SERVICE**

I, David Pryor, hereby certify that the foregoing document will be served via the Court's ECF system to ECF registrants and/or via U.S. Mail on November 7, 2021. BNSF will also serve a courtesy copy via email on the individuals BNSF believes represent each Defendant.

/s/ *David Pryor*

_____